CHARLES BOWERS, APPELLANT, V. JAMES RAITT ET AL., APPELLEES.

FILED JUNE 23, 1914.     No. 17,956.

1. **Appeal:** TIME FOR FILING TRANSCRIPT. When there is a motion for new trial alleging errors of law occurring at the trial in an action in equity, the transcript on appeal to this court may be filed within six months from the overruling of such motion.

2. **Appeal in Equity:** CONFLICTING EVIDENCE. When two witnesses relate the details of a conversation and transaction between them, and materially disagree as to what was said and done by them, it is of great advantage in determining the truth of the matter to hear their testimony and observe their demeanor and surroundings while testifying. When the trial court has this advantage, and the record shows which of the two witnesses the trial court relied upon, and does not show that the court was wrong in so doing, this court will consider the action of the trial court in weighing such testimony.

3. **Vendor and Purchaser:** EXCHANGE OF PROPERTY: RESCISSION. If the plaintiff is under no disability, and has all the opportunity he desires to investigate property offered him in exchange, and relies upon his own judgment of value, and makes a contract of exchange of property with defendant, he cannot afterwards rescind the contract on the ground that the property he exchanged was of greater value than the property he received.

Rehearing of case reported in 94 Neb. 567. *Judgment of affirmance adhered to.*

SEDGWICK, J.

The nature of the case is stated in the former opinion. 94 Neb. 567. Upon the motion for rehearing some doubt was felt as to the sufficiency of the evidence to support the decree. New briefs have been filed, and we have reread the record. The trial court made no special finding of fact, but found generally for the defendants, and entered a decree accordingly.

Upon the rehearing the objection that this court has no jurisdiction of the appeal is strenuously insisted upon. It appears, as stated in the former opinion, that after the decree was entered in the district court a general motion for new trial was immediately filed, and some time afterwards a second motion for new trial was filed on the ground of newly discovered evidence, which was supported by affidavits. We are satisfied that the effect of this newly discovered evidence was properly considered in the former opinion. The objection to the jurisdiction was not there discussed. We think, however, there is no doubt of the jurisdiction of this court upon this appeal. The statute provides that an appeal may be taken "within six months from the rendition of such judgment or decree or the making of such final order or within six months from the overruling of a motion for a new trial in said cause." Rev. St. 1913, sec. 8186. It is contended that no motion for a new trial is necessary in equity causes, and therefore in such case the transcript must be filed within six months after the entry of the decree, but this court has held that a motion for a new trial is necessary in such cases, if it is

desired to review alleged errors of law occurring at the trial. *Farmers Loan & Trust Co. v. Joseph,* 86 Neb. 256; *Brady v. McGinley,* 94 Neb. 761. The general motion for a new trial in this case raised such questions, and the appeal was docketed in this court within the six months after that motion had been overruled. The plaintiff could not know that an appeal would be necessary until that motion for a new trial had been passed upon. We think that the statute should be literally construed in such case, and the six months' limitation runs from the overruling of the motion.

The question whether the decree of the district court is right upon the whole evidence is a more difficult one. The plaintiff exchanged a quarter section of land in Holt county and a real estate mortgage securing $11,500 and bearing 5 per cent. interest for the mill property in question. There is some evidence that, in order to realize upon the mortgage, it would be necessary to discount it slightly; but it is clear that the mortgage was substantially of the value of $11,500. There is perhaps some little conflict in the evidence in regard to the value of the mill property. Several witnesses, who appear to be disinterested, or at least not interested in behalf of the plaintiff, and who had bought and sold this property, and had owned it for some years, and appear to be familiar with the property and competent to estimate its value, place it at from $5,000 to $7,000. Not long before this transaction, new machinery had been placed in the mill and other improvements made at an expense of $5,393.15, and the money that had been invested in the property, or the replacement value, would be nearly, if not quite, the amount that the defendants estimated it in the exchange. The evidence shows that these facts furnished no basis for determining its value as a going concern, in that locality, under existing conditions. Several witnesses were offered in behalf of the defendants, who, when they were asked if they knew the value of the mill property at the time of this transaction, answered that they did not. These witnesses appear to be reliable and competent. They testify to the

cost of the property and to the replacement value, and afterwards, in reply to questions more or less leading, state an opinion as to what it should be considered to be worth; but the evidence of these witnesses is of very little, if any probative force as to the real market value of the property. It is very clear that the value of this mortgage which the plaintiff exchanged for this mill was at least $5,000 more than the value of the mill property which he received in the exchange. If the plaintiff himself was innocent in the matter, and was induced by fraud or misrepresentation on the part of the defendants to make the exchange, the decree of the district court is wrong. The Holt county land which the plaintiff was to convey to the defendants was incumbered by mortgage, which amounted at the time to about $1,700. The defendant claims that the plaintiff represented this mortgage to be $1,400 only; but he insists that he told them the true amount of the mortgage, and agreed to pay $300 of it himself, which was due at the time. The plaintiff's equity in this land was estimated in this exchange as of the value of $5,000. From the evidence it appears that it was of very little, if any, value. Evidently the plaintiff supposed that the defendants were valuing this land in the exchange at about $5,000, and the plaintiff relied upon that fact as a safe margin of profit in the deal. The misrepresentation and fraud on which the plaintiff relies as a ground for relief are testified to only by himself. He testifies that the defendant Raitt, who was the agent who made the contract with the plaintiff, told him that the mill property was worth $20,000, and also told him that the mill had continuously been operated at a profit, and that the net profits realized were about $4,000 in the last few years. Mr. Raitt denies that he made such statements, and testifies that he told the plaintiff that he (Raitt) had no personal knowledge in regard to the mill property; that he and his principal, Mr. Lyon, valued the property at $20,000 in the exchange in which they received it, and also told the plaintiff that certain men, whom he named, were familiar with the property, and had told him that there had been

Bowers v. Raitt.

profits realized in the last few years; that he considered those men reliable, but that the plaintiff ought to examine the property for himself, and might also talk with the men named, if he desired to do so. In some particulars, in which he disagrees with plaintiff, he is supported by the testimony of other witnesses.

The record is a large one; there is a great amount of testimony, and it is impracticable to attempt, within the limits of this opinion, to analyze the evidence in detail. So far as we can see from the record of the evidence, the plaintiff and the principal witness, Raitt, have not purposely misstated the facts as they understood them. Therefore, in order to determine with any certainty the fine questions of fact that are at issue between these two witnesses, it would be of great advantage to hear them testify and to observe their demeanor and the surrounding circumstances while they were giving their testimony. This advantage the trial court had. If the evidence of the witness Raitt is to be believed as he intended it should be understood, no substantial misstatements of facts that could impose upon an intelligent man, competent to attend to his own business, was made with the purpose and intention of defrauding him of his property. We cannot say from this record that the trial court was wrong in so regarding this testimony. The plaintiff was not competent to judge of the value of such property. He had made a few trades in land and horses, and may have had an undue confidence in his ability to take care of himself. If the trial court is right in relying upon the evidence of Raitt, the plaintiff must have assumed from the appearance of the property, and from such statements of opinion and estimates as sellers of property are justified in making and the law does not consider fraudulent, that the mill property was of much greater value than his mortgage, and that the party with whom he was trading considered the Holt county land to be of substantial value, and so the plaintiff estimated that he was succeeding in disposing of his Holt county land very favorably. Under these circumstances the plaintiff's unfortunate loss is the result of

his cupidity, his willingness to get something for nothing, and his mistake in relying upon appearance and upon his own judgment without sufficient investigation.    Under these circumstances, unfortuante as it is for himself and his family, it does not appear that the law can afford him any relief.    We cannot see that the decree of the district court is wrong, and our former judgment is therefore adhered to.

AFFIRMED.

ROSE, J., dissenting.

According to my understanding of the record in this case, after a thorough investigation, defendants defrauded plaintiff out of a large amount of property which ought to be restored to him in a court of equity.    This conviction is so clear and distinct in my own mind that I am unwilling to concur in the contrary opinion of the trial court or of the majority of this court.    I therefore dissent.