THOMAS L. HALL, APPELLANT, V. EMERSON L. BOWERS ET AL., APPELLEES.

FILED NOVEMBER 23, 1928. No. 26171.

*Burkett, Wilson, Brown & Wilson*, for appellant.

*Kennedy, Holland, De Lacy & McLaughlin, contra.*

Heard before GOSS, C. J., THOMPSON and EBERLY, JJ., and REDICK and STALMASTER, District Judges.

GOSS, C. J.

This suit was brought to enjoin defendant from using the right of way of the railroad company for the purpose of driving live stock toward a local station for shipment to market. From a decree adjudging that Emerson L. Bowers, the chief defendant, might use a lane on the right of way created under a license from the railroad company the plaintiff appeals.

Emerson L. Bowers (who will be referred to as defendant unless it becomes necessary to distinguish him from other defendants) and Thomas L. Hall own and occupy farms north of the village of Verdon, both located in the west half of a certain section. The Hall farm is directly south of the Bowers farm and therefore is nearer to the railroad station at Verdon, which is their normal shipping point. The railroad runs in a southeasterly direction through both farms toward Verdon. The right of way is held by the railroad company by virtue of condemnation proceedings. On the easterly side of the right of way Mr. Hall has on his farm a private road 23 feet wide running southward from his improvements to the east and west public highway on the south of his farm. From this public highway there is a public highway south toward Verdon and adjacent to the east side of the right of way. The evidence does not show how far Verdon is from the east and west highway, but it is not far. Previously the defendant had to drive his stock for shipment north of his home and around by the public road, additional distance, of about two miles, to Verdon, but some time prior to the commencement of the suit he had been driving them down the right of way to the aforesaid east and west public highway and thence to Verdon along the said public highway adjacent to the right of way. He testified that it saved him $40 to $50. a car to use this shorter route to drive his hogs to Verdon for shipment as compared with hauling them by truck, which was necessary when taking the longer route, because it is too far and there are too many bridges on the road; and that during the prior year he had had a total of 141 cars of all kinds for all his farms in and out of Verdon on the Missouri Pacific. Plaintiff had two private way crossings of the railroad near his improvements in the northern part of his farm for the use of that part of his farm west of the railroad.

The petition was filed March 4, 1926, and we assume that is the date of the commencement of the suit. At that time defendant had no license from the railroad company to use

its right of way for the purposes complained of; and for some time he had been driving his stock through a fence on his south line and thence down the right of way and on plaintiff's private road, which was not then fenced against the right of way. Such was the situation until after the suit was commenced.

The evidence shows that under date of April 10, 1928, defendant and the Missouri Pacific Railroad Corporation in Nebraska, which owned the railroad in question, entered into a written agreement, called a "License to occupy railroad right of way." This license covered a strip of the right of way 28½ feet wide along the east side thereof and next to the private road of plaintiff. It extended from the east and west highway in a northeasterly direction about 2,870 feet to defendant's land. It provided for a fence along the boundary of the strip nearest the railroad track and for gates to be constructed across the strip where it intersected the private crossings of plaintiff. The license was not to be operative until the fence and gates should be constructed and installed and it provided for other things not necessary to state here. The gates and fence were not yet constructed, but a fence had been erected on the right of way line between the railroad and the Hall private road before the time of trial.

The district court found that, at the commencement of the action, the defendant Emerson L. Bowers had, without lawful right, been using the railroad right of way where it crossed plaintiff's lands for the purpose of driving live stock to the station at Verdon, that at such times they had trespassed on plaintiff's lands and private driveway and that, at the commencement of the action, plaintiff was entitled to an injunction restraining said defendant from using the right of way and from said trespasses on said land; that, after the action was begun, the railroad company had granted said defendant the license to drive his live stock through the lane made by the boundary line fence of the right of way and by the fence between that and the railroad track; and that said license was valid

as between plaintiff and defendant. The court decreed that the defendant might use the land described only as permitted by the license.

The questions raised on appeal are questions of law. Appellant's first assignment alleges that the court erred in receiving the license in evidence under the answer, which consisted of a general denial. The petition alleged that the defendant trespassed on plaintiff's private way without the consent of plaintiff, drove his live stock along both the right of way of the railroad company and the private way of plaintiff with no fence to separate said ways; that the driving of cattle and hogs over the right of way of the railroad was no part of the railroad business; that the condemnation proceedings by which the right of way was acquired gave the railroad company no authority to drive live stock over the right of way or to permit the same to be done by the defendant; and that the said acts of the defendant were done by him without right or authority and without any permission or grant of leave by the plaintiff. The general denial raised an issue on all the material facts alleged. Plaintiff was therefore required to prove in these respects that the defendant had no permission (1) from the plaintiff to trespass on his land and (2) had no authority from the railroad company to drive his stock along the right of way. Of course, plaintiff had in reserve as a matter of law the lack of legal right of the defendant to use the right of way even if granted such authority by the railroad as it might have. It is to be noted that, when the license was offered in evidence, the plaintiff did not object to its admission on the ground that it was not pleaded in the answer, but merely objected to it "as incompetent and immaterial under the issues." This did not fairly bring to the notice of the trial court the objection that he argues here. If he had objected to the license on the ground that it was not pleaded, the court might have allowed the answer to be amended on such terms as might be just. Moreover, the transcript does not show that any motion for a new trial was filed. In *Farm-*

*ers Loan & Trust Co. v. Joseph,* 86 Neb. 256, we held: "In an equity case appealed to this court, if it is desired to review alleged erroneous rulings of the trial court as to the reception of evidence, a motion for a new trial must be filed and overruled in the district court." That is the settled rule both in actions at law as well as in suits in equity. *State v. Citizens State Bank,* 115 Neb. 271, and cases cited therein. We think there was no error in the ruling of the court and, if the ruling was erroneous, it has not been properly challenged and preserved.

The other assignments of error attack the right of the railroad company to use the right of way or to allow it to be used by another even for the limited purpose of driving the live stock of the defendant through the land toward the station for shipment, or from the station to his home.

It was stipulated on the trial that the railroad company has no title to the real estate except such as was obtained by its predecessor, which condemned the right of way across the land now owned by plaintiff; and that the plaintiff is the owner of the fee, subject only to the rights of the railroad company obtained under such condemnation proceedings.

The main question for consideration is whether the proposed use of the right of way was reasonably to be contemplated when the right of way was transferred to the railroad company. Questions somewhat analogous to that involved here have arisen in a multitude of cases, too numerous even to cite. It has been held, when the business is conducted by the railroad or by its patrons in such a way as to further the business of the railroad, the right of way may be used for elevators, lumber yards, coal yards and sheds, for wharves, docks and piers, for warehouses and corn cribs, for storage purposes, for stock-yards and pens, for refreshment and recreation places, for hotels and boarding houses, and for telegraph and telephone poles, for cultivation of portions of the right of way by third persons, and for uses for many other miscellaneous purposes. In an extensive note on the uses to which railroad right of

way may be devoted as against the owner of the fee, found in 36 L. R. A. n. s. 512, the author well sums up the general principles in these words: "The general rule seems to be that any use of the right of way, or any structure upon it that tends to the convenience or benefit of the railway company or of its patrons, and that does not interfere with the business of the company or its duty to the public, and that does not cause special or irreparable damage to the fee owner, will be permitted, even against the objection of the fee owner."

The testimony in this case shows that the use of the right of way was induced by an arrangement between defendant and the railroad company that he should give the railroad company all business arising out of live stock shipped by him and driven over the right of way. By the terms of the written license either party may terminate it on 30 days' written notice served on the other.

This arrangement served the purposes of both parties to it. It saves the licensee a long drive of his fat cattle and hogs to the station for shipment and such incidents in the way of time and shrinkage as would flow therefrom. As long as the license continues it insures tonnage of live stock to the railroad through this advantage over its competitor in the same town.

We are of the opinion that the general rule heretofore quoted is peculiarly applicable to this case. Is there any great and irreparable injury likely to result to the appellant? When he brought the suit the license to use the right of way was not in existence and, as the evidence shows, the almost inevitable result of driving cattle down the right of way was to cause a trespass on his private driveway if not upon his farm lands. At the time of the trial his main objection was removed by the fact that the right of way had by that time been fenced off from his driveway. If it had not been for the injunction the lane contemplated by the license would probably have been fenced. Before the license can be operative by its terms, it must be fenced. When that is done the appellant's causes of complaint will

be limited to the use by defendant of the right of way over appellant's two railroad crossings between the east and west sides of his farm. The license from the railroad, in precise terms, requires the licensee to put "the necessary gates therein at all places where said strip intersects existing private crossings." The appellant does not have the right to the continuous and exclusive use of these crossings at all times so that he can prevent all other use of that portion of the right of way. The evidence shows that it is the intention of the railroad company and of its licensee that gates shall be so provided that, when the strip or lane is used under the license, swinging gates may close the crossings against the live stock driven down the right of way and the same gates may serve to protect the lane and make an open crossing for appellant after the live stock of the licensee shall have passed the crossing.

Each case of this kind must be bottomed on its own facts. To our minds the appellant has suffered and will suffer no irreparable injury through the use of the right of way as contemplated by the license; the contemplated use of the surface of the right of way does not jeopardize his fee title, is not likely to injure the health of his own live stock, does not impair his use and enjoyment of his contiguous lands and does not entitle him to injunctive relief under the facts shown.

We are of the opinion that, where lands have been legally condemned and appropriated for railroad right of way through a farm, the use of a strip of that right of way, granted by written license from the railroad company to one of its patrons for his convenience in driving live stock to the railroad station for shipment and terminable on short written notice, will not be enjoined at the instance of the adjoining owner who is the owner of the fee in the right of way, in the absence of special or irreparable damage to such owner.

The decree of the district court was right and it is

AFFIRMED.

Heard on motion for rehearing April 25, 1929, before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges. *Motion over-ruled. Former opinion adhered to.*

SHEPHERD, District Judge, dissenting.

Because of the following, I dissent from the majority opinion.

Shippers and feeders commonly handle more or less diseased stock, not of intention, but because it cannot be avoided—stock infected with cholera, tuberculosis and other communicable diseases. One hundred and fifty carloads a year through a narrow runway on a man's farm expose him to no small risk through danger of infection to his own stock. Cattle, horses and hogs go eagerly to smell and to lick the fencing along such a runway. The runway in question permits the lessee, not only to drive away upon it for shipment by the Missouri Pacific, but to bring in by it for feeding from 100 points accessible by the county highways. Is Hall's injury in this particular reparable because he may sue Bowers at law when his cattle fall sick from such a cause? And must he incur the hazards of proof in a law action time after time as loss occurs, when the danger is at all times obvious and when he might have complete relief by a single suit in equity? The very question suggests a negative answer. Used as it is, this runway decreases the salable value of plaintiff's place by many hundreds of dollars, though no doubt such a use was never thought of when the land was condemned. In addition to this, he has been postponed in his prior acquired right of crossing to the present privilege now granted to the defendant—in his access from one part of his farm to another, given him long before by the company. It seems to the writer that it is being blind to the evidence and to patent conditions to dismiss Hall's damage with the statement that it is neither special nor irreparable. Hitherto it has been widely accepted as elementary that what is improper and illegal, except in certain cases of special and peculiar character, may be restrained without reference

to the degree of injury involved. The plaintiff may have a penchant for disagreement with his friends and neighbors, though this appears rather by statement of counsel than by the record; but, even so, he should not be stripped of his legal rights as he stands before the court.

With due regard for the views of the majority, the pronouncement that the railroad company may use its right of way in any manner beneficial to it or to its patrons is much too strong. It not only extends the power of railroad companies over their right of way far beyond the bounds heretofore established by our decisions, but it creates in substance a new estate almost as desirable as an estate in fee simple. Under and by virtue of power derived from condemnation, as recognized by the opinion, a railroad might construct a speedway for motor vehicles upon its right of way, or for a valuable consideration commit the right to do so to third parties. And hardly could it be enjoined if a nuisance were there maintained in that connection. The point is, we are abandoning the old ground that railroads may condemn and use their right of way only for such things as are naturally incident to operating a railroad, and going to a doctrine which has little support in logic and which promises many difficulties.

I think that the power which the company assumed to exercise in giving Bowers a right to build a private cattle road upon Hall's farm was a power which it did not possess. As before stated, nothing of the kind was contemplated on original condemnation or considered in the award of damages. Yet, from the simple easement acquired for railroad purposes, the company proceeded to carve out and convey a leasehold estate, i. e., to grant Bowers this private way for his stock over his neighbor's land. If power to do a thing of this kind is within the powers of railroads generally, why should they be troubling themselves in these latter days to get deeds to ground long ago condemned by them for right of way?

Perhaps giving Bowers a privilege so valuable (he tes-

tifies that it is worth $5,000 year to him) was not strictly a rebate, but it was a buying of his shipping business, and practically tantamount thereto. · It was, in the opinion of the writer, an undue and unreasonable preference such as the law prohibits. Comp. St. 1922, sec. 5510; sections 5440 and 5509 of said statutes, as amended by chapter 160, Laws of 1923, and chapter 164, Laws 1925. "Under the law in this state, a railroad company or other common carrier may not exchange transportation for services or property by way of barter, uniformity of charge being required." *State v. Union P. R. Co.,* 87 Neb. 29. This transaction between the Missouri Pacific and Bowers was a barter by which in effect the latter secured a reduction in his shipping charges. This court stated in *State v. Chicago, B. & Q. R. Co.,* 112 Neb. 248, that at common law a carrier of goods or passengers was under no obligation to treat all persons equally, but might grant one individual an unreasonably low rate or even carry for him without making any charge whatever. But it concluded in said case, in view of section 7, art. X of the Constitution, providing that the legislature shall pass laws to correct abuses and prevent unjust discrimination by telegraph and railroad companies in Nebraska, that such power on the part of common carriers has been taken away. The case will be remembered as the suit brought to prohibit railroads from giving transportation to ministers. The favor granted to Bowers should not receive the sanction of the court.

The opinion, I am quite sure, does some violence to fundamental rules of pleadings. As clearly presented in the argument of plaintiff, the general denial filed by the defendant was not sufficient to entitle him to show the lease which he obtained from the company after the commencement of the case at bar. If he desired to defend upon this lease—and without it he would have been without any defense whatever—it was incumbent upon him to plead it, just as the maker of a note is required to plead payment if he would avail himself of that defense in a suit upon

said note. And the objection of "incompetent" to the offer of said lease upon trial was enough to exclude it, unless we go upon the subversive theory that the one at fault is to have more tender consideration at the hands of the court than the one who is without blame. So far from requiring the party to particularize his objection, it would seem more reasonable to oblige the trial court to inquire as to the specific end to be reached by the general objection of "incompetent" before the objector is to be deprived of any exception which he is entitled to under the broadest meaning of the term. The matter is of much importance to the plaintiff in this case, but it is of far greater importance in its effect upon rules of constant application.

For these reasons, I consider the majority opinion unsound, and think that the decision should be in favor of the appellant, and that he should be awarded the relief prayed.

THOMPSON and EBERLY, JJ., dissenting.

While we join in the conclusions reached by Shepherd, District Judge, in his dissent, it might be well to further suggest that this court should take judicial notice that the Missouri Pacific Railroad (involved herein) is one engaged in interstate commerce, and hence the federal laws, as well as those of our state, must have consideration and be permitted to function in determining the question of illegal discrimination. Such federal laws have been construed in the following cases: *United States v. Vacuum Oil Co.*, 153 Fed. 598; *Hocking Valley R. Co. v. United States*, 210 Fed. 735; *Spencer Kellogg & Sons v. United States*, 20 Fed. (2d) 459; *Armour Packing Co. v. United States*, 207 U. S. 590; *United States v. P. Koenig Coal Co.*, 270 U. S. 512.

Thus considered, it necessarily follows that syllabus No. 2 of the majority opinion is erroneous, as is the affirmance of the trial court's judgment.