LEO B. STUHR ET AL., APPELLANTS, V. CITY OF GRAND ISLAND
ET AL., APPELLEES.

FILED JANUARY 2, 1931. No. 27198.

*Horth, Cleary & Suhr,* for appellants.

*Arthur G. Abbott, A. C. Mayer* and *H. G. Wellensiek,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOSS, C. J.

Plaintiffs appeal from rulings excluding evidence and from certain terms of a decree rendered by the district court in their suit to enjoin the city from building an open canal for sewage purposes over a strip condemned through their lands to Wood river. Defendants cross-appeal on

(491)

account of the admission of certain evidence and because of certain terms of the decree, but particularly because it ordered "that the defendant, City of Grand Island, be and it is hereby enjoined from the constructing of an open canal across the lands of the plaintiffs in accordance with the plans proposed by Kenneth Y. Craig or in accordance with the plan proposed by Black and Veatch, until such a time that said city shall, by the construction of an adequate disposal plant, or by other appropriate means, render the output of the sewage of such city, which flows past the lands of the plaintiffs, and which may be carried thereon by overflow, clear and odorless, with the contents of organic matter sufficiently oxidized so that it is non-putrescible and incapable of causing a nuisance, and when so constructed the defendants herein may apply to this court for a dissolution of this injunction."

The problem of the disposal of both storm and sanitary sewage for Grand Island is difficult because of the level character of the land and the slightly lower elevation of any stream into which the sewage can be discharged. For many years the city conducted both its sanitary and storm sewage through the same system. When the growth of the city in area and population rendered these provisions inadequate, a new sewer was constructed to take care of storm sewage and the old one was used for sanitary sewage. Both of these systems led toward the southeastern part of the city. The parties stipulated at the beginning of the trial that the sanitary sewage of the city was conducted through its closed sewers to the corner of Cherry and Sutherland streets (about six blocks east of the county courthouse) where the city maintained a disposal plant, thence it ran through a closed sewer down Cherry street in a southeasterly direction about 3,000 feet (as shown by applying to the map in evidence the scale indicated thereon) to Bismark road, and thence east about 4,800 feet to Wood river; that the storm sewer is a closed sewer until it reaches a point known as Plum and Sutherland streets (one block west of Cherry street) ; from that point it runs as an open ditch approximately a block east, thence

southeast on Cherry street and Bismark road to Wood river, alongside the sanitary sewer on the west and south on its course to the river; that the city has its disposal plant for sanitary sewage immediately east of the corner of Cherry and Sutherland streets and on the east side of the Burlington Belt Line tracks; that the city intends to build a sewer system from the present point of the end of its closed storm sewer, at Plum and Sutherland streets, east to Wood river over the land of some of the plaintiffs.

The maps and oral evidence are confusing. Some of the maps show, and the testimony sometimes speaks of, the Platte river as the place of wasting the sewage. It is not the Platte river, as now existing and running several miles farther south and east of this location, that is meant. Usually it is called Wood river, and consists of two channels beginning to branch apart several hundred feet south of the point where the sewer now discharges into what is known as the north branch or the west branch or channel. A large portion of the year this branch is dry. The other branch probably carries water at all times. Both branches run in a northeasterly direction at all points with which we are concerned. By the use of the scale they appear to be nowhere more than 400 feet apart. We understand that the Wood river empties into the Platte some miles northeast of the plaintiffs' lands.

Plaintiffs sought an injunction against the extension of the open sewer system from its disposal plant directly east to Wood river through and past the lands of plaintiffs. It is unnecessary to abstract the voluminous pleadings fully, but the points of the petition that need be stated are that the storm sewage alone contained bacteria dangerous to those living in the vicinity where it was carried, and that the inadequacy of the disposal plant and of the capacity of the sanitary sewer resulted in the escape of such harmful elements from the sanitary sewage into the open storm sewer ditch; that the city was threatening to build the open ditch across and adjacent to plaintiffs' lands to handle the storm sewage carried by the present open ditch and also the products from its disposal plant

when necessities require; and it is alleged the things complained of will constitute a nuisance.

The answer of defendants denied that any sanitary sewage is transferred to the present open ditch and that they were intending to use the proposed open ditch across the condemned right of way for any sanitary sewage but alleged that it was to be used exclusively for storm water sewage. It had further answered that, when its financial condition permitted, the city intended to inclose the storm sewer in a water tight box of reenforced cement and thereafter to conduct its sanitary sewage through it. The trial was begun on the 4th of October, 1928, and, after three days, was discontinued until June 18, 19, and 20, 1929, when it was concluded. After the suit had been begun, on the recommendation of its engineers, the city had devised a plan to modernize its sewage disposal plant. And so, on June 18, 1929, it amended the aforesaid answer by striking out the references to the inclosed concrete sewer and alleged that it did not "contemplate, nor did it ever intend, to run its sanitary sewer through said open ditch until after it had completed its disposal plant in accordance with the recommendations of its engineers;" and it left its former allegations that, if the open ditch when completed were used for an unlawful purpose or caused a nuisance, this would give plaintiffs an action for damages or a right to enjoin the maintenance of a nuisance, but that plaintiffs should not be permitted to assume that defendants will disobey the law.

The pleadings and the evidence show that the strip of land condemned for the purposes of the new sewer outlet is 66 feet wide. It runs directly east from the disposal plant, and the map showing its extent indicates that this storm sewer or proposed sewer outlet is to run to the east branch of the Wood river or Wood river proper, whereas the sanitary sewage is deposited in the west or so-called "dry" branch. The plaintiffs had attacked in their pleadings the legality of the condemnation of these lands but evidently abandoned this point on the trial.

There was evidence to the effect that in times past sewage escaped from the sanitary sewer into the ditch carrying the storm water, consisting only of drainage from the streets and water wasted from the electric light plant; that the present disposal plant was not of the type that eliminated the harmful bacilli from the sanitary sewage or greatly modified its content in that respect; that in times of high water causing overflow of the storm sewer it, with added content sometimes escaping from the sanitary sewer, as aforesaid, went upon the lands of plaintiffs, and, when the waters receded, was left there; that the deposit of sanitary sewage at the present outlet in the dry branch of Wood river was offensive to health, and on occasions of high water would likewise overflow on the lands of plaintiffs and when the waters receded would be left there; that the natural surface drainage of plaintiffs' lands was to the north and east and that the dry branch of Wood river aided drainage and secured an earlier runoff in times of flood; that the proposed open canal or ditch on the condemned right of way, through the lands of plaintiffs to Wood river, would cross the dry channel, and, in order to carry sewage water there, would require dikes or banks about seven feet high; that without such dikes or banks the canal would be sluggish and shallow and would permit the sanitary sewage in the north branch to back up into the canal for a considerable distance toward the residences of the plaintiffs and to create a nuisance and menace to their health; that the construction of such dikes and the carrying of the canal across the dry channel would cause the overflow of plaintiffs' lands to be greater and hold the water upon the land longer; and the evidence seemed fairly to indicate that the present disposal plant of the city could be so completed by the addition of units for the removal of harmful elements from the sanitary sewage by modern methods as to abate or eliminate that which now creates a nuisance at the present outlet and to do away with the danger from overflow and deposit on the lands of plaintiffs.

The findings of the court were substantially in line with what we have just recited and the decree was in accordance therewith.

The plaintiffs assign as error that the court excluded certain evidence offered by them. No motion for a new trial was filed by appellants. A motion for new trial must be filed and overruled in the district court to authorize a review of rulings on evidence in an equity case. *Farmers Loan & Trust Co. v. Joseph,* 86 Neb. 256; *State v. Citizens State Bank,* 115 Neb. 271; *Hall v. Bowers,* 117 Neb. 619.

The plaintiffs also assign as error the first finding of the court to the effect that "the building of the open storm sewer, such as contemplated by the defendants at the inception of the suit, would not, in itself and disconnected with the problem of an influx and overflow of sewage from Wood river at the proposed outlet, constitute a nuisance or endanger the health of the plaintiffs to the extent that it should be enjoined." The evidence indicates, as given by nonexperts and experts, that the storm waters from Grand Island probably contain no other or different harmful bacteria or bacilli than those found in or coming from any manure pile or from the ordinary farm barnyard. Unless kept from sources of water supply for man or beast, both are harmful. If this canal carrying storm sewage only could be kept on the city's right of way until it mingled with a flowing stream, and if the canal to carry it there could be built so as not to interfere with the escape of the sanitary sewage deposited elsewhere by the city, it would do no harm. We think there was no error there.

The only other assignment of error by plaintiffs is as to that "portion of the court's order which permits the city to build such open ditch and transport therein the sewerage proposed to be transported after additions have been made to the present disposal plant." As we analyze the order, it was at least as favorable to plaintiffs in this respect as they could expect under the law. The order enjoined the construction or use of the open canal for any sewage, storm or sanitary, not only until after the amendment of the disposal plant, but until its product reached

a defined state of harmlessness. The plaintiffs cannot complain of these terms which fully protect them and which are objected to by the defendants in their cross-appeal as being erroneous. Practically the entire order part of the decree is quoted in the first paragraph of this opinion.

The first assignment of error by the defendants on their cross-appeal is that the court erred in its order enjoining the city from constructing or maintaining the storm sewer ditch until after certain additions are made to the sanitary disposal plant. Defendants state in their argument in their brief on this point that the proposed ditch "is not only to be entirely disconnected from the sanitary sewage system, but it is to be inclosed for about a quarter of a mile until it passes beyond the Burlington right of way, and there is, therefore, no possibility of any of the sanitary sewage running over into the proposed ditch. Indeed, the plaintiffs admit that the proposed ditch is to be only for the water from its electric light plant and storm waters." The city evidently overlooks its answer as amended at the time of resuming the hearing in June, 1929, to which we have heretofore referred. Thereby it alleged, or at least strongly implied, its intent to use this open ditch or canal for its sanitary sewage after the completion of its disposal plant. The judgment and order evidently was intended by the court to be so devised as to prevent sanitary sewage from being a nuisance to or deposited on the lands of the plaintiffs whether such sewage came from the present place of discharge or from its carriage through the "open canal across the lands of the plaintiffs in accordance with the plans," etc. It seems to us, after reading the evidence, that the court had no intention of enjoining the city from using the condemned land for a canal or ditch to carry storm water so long as it did not build dikes across the north channel while it continued to discharge the sanitary sewage of the city at the present place farther south and up that same channel and, further, so long as the city did not build dikes along the canal west of said channel in such a way as to increase

the danger of holding sewage now deposited in the channel on the lands of plaintiffs when taken there in times of high water. With these limitations the city has a right to use its land for the carriage of its storm sewage and we think there is nothing in the decree itself to prevent it, though from the evidence there is some question whether it is feasible to carry the storm sewage to the north channel only without the aid of dikes that might be objectionable under the decree so long as the sanitary sewage is discharged in the north chanel.

It is to be noted that the court did not perpetually enjoin the city from constructing the canal across the strip. The injunction was against the construction according to certain plans and until certain changed conditions arose under which the construction in that manner would not be objectionable as in aid of the creation of a nuisance. This is on the principle that in granting an injunction a court of equity will not go beyond the necessities of the particular case before it. *City of Omaha v. Hugh Murphy Construction Co.,* 114 Neb. 573; *Francisco v. Furry,* 82 Neb. 754.

The defendants formally assign other errors but they are not argued or are otherwise covered in our discussion. The district court was careful in its judgment to preserve to the city an opportunity to have the injunction dissolved when by a disposal plant or by other appropriate means the output of sewage would cease to cause a nuisance to the plaintiffs. While the description of the content of the sewage to be produced by such means as the city may use is, if taken literally, too strict, yet it will, on any further test, be interpreted rather by the spirit of the judgment to mean such a content as will not create a nuisance. With such an understanding there is no error in the judgment.

For the reasons stated, the judgment of the district court is

AFFIRMED.