JOHANNA FAIMAN, APPELLANT, V. CITY OF OMAHA, APPELLEE.

FILED DECEMBER 23, 1936. No. 29701.

*Leigh & Krajicek,* for appellant.

*Seymour L. Smith, Harold C. Linahan, W. W. Wendstrand* and *A. C. R. Swenson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ.

EBERLY, J.

This is an action at law for damages to the real estate of the plaintiff, alleged to have been occasioned by the discharge of sewerage by the defendant into a ravine adjacent to the property of plaintiff. In this connection, we would define "sewerage" as, "the systematic removal and disposal of sewage and general surface water by sewers." Webster's New International Dictionary (2d ed.) Unabridged.

Plaintiff's petition may be summarized as alleging: That

the defendant is a municipal corporation of the metropolitan class; "that plaintiff * * * was the owner of the following described property: Lot Three (3) in Block Two (2), Dworak's Addition * * * to South Omaha, now Omaha, Douglas county, Nebraska; * * * that the defendant, city of Omaha, owns and is now maintaining a park in the city of Omaha, known as Brown Park," and as part thereof has constructed and maintains therein a swimming pool; that the city of Omaha "has constructed and is now maintaining a sewer in said city * * * for the drainage of 'S' street and other streets to the south of plaintiff's property," which sewer connects with and forms the outlet of the Brown Park swimming pool; that the defendant has constructed and is maintaining an outlet for this sewer into a small ravine to the west and south of plaintiff's property, but that said ravine is not a natural ditch or watercourse, and had always been a dry ravine without any water flowing into it, until the city of Omaha caused said sewer to be discharged into this ravine; that defendant also caused and permitted connections to be made to said sewer for sanitary purposes; that the surface waters thus collected by the sewer complained of, to which were added the drainage water contributed two or three times a week from the Brown Park swimming pool and the sanitary sewerage mentioned and which formed a part thereof, were so carelessly and negligently caused to be carried from said streets in said sewer and over and across plaintiff's land that it "has cut large ditches through and along plaintiff's land to a depth of two hundred feet or more, and has carried and washed away large portions of plaintiff's property as heretofore described; and that the plaintiff's residence is about to crumble into said ravine, also a large portion of said described property has been entirely destroyed, either for residence or business purposes;" that due to sewage contributed from the sanitary connections permitted and caused to be made by the defendant to said sewer, the waters carried thereby and discharged into said ravine, as an open ditch, were of such a nature that by reason of the

odors emanating therefrom, especially during warm weather and summer months, the use of plaintiff's home has been seriously interfered with, and its value for residence purposes greatly impaired; "that by reason of the washing away of said premises and the encroachment of the ditch carrying said waters and sewerage upon plaintiff's premises, and the odors emanating from said sewerage," the plaintiff has been damaged in the sum of $4,750. The foregoing is followed by an appropriate prayer.

To this petition the city of Omaha answered, and in the first paragraph thereof admitted its corporate capacity; admits plaintiff's ownership of the *locus in quo;* the construction and maintenance and operation of the sewer for the drainage of "S" street and other streets to the south of plaintiff's property and elsewhere; that said sewer connects with the swimming pool in Brown Park; that the defendant constructed an outlet into a small ravine west and south of plaintiff's property; and concludes with a general denial of the allegations in plaintiff's petition not admitted. In the second paragraph of the answer it is alleged that the sewer complained of was constructed and completed and connection made with the swimming pool in Brown Park for approximately eight years before the commencement of this action, and that the cause of action alleged by plaintiff did not accrue within four years next before the commencement of plaintiff's action, and therefore the same is barred by the statute of limitations.

The new matters alleged in the answer were put in issue by plaintiff's reply.

A jury was impaneled and evidence introduced on part of both plaintiff and defendant. Pursuant to an order entered by the trial court, the jury inspected the premises constituting the *locus in quo,* and, after argument of counsel and instructions given by the court, the jury returned a verdict finding "for the said defendant and against the plaintiff," and judgment for defendant was entered thereon. From the order of the trial court overruling her motion for a new trial, plaintiff appeals.

The plaintiff relies upon four alleged errors of the trial court as the basis of her appeal, viz.: The giving of instructions No. 3, No. 4, and No. 5 of the instructions given by the trial court on its own motion; the verdict of the jury and the judgment rendered thereon are not sustained by the evidence.

A careful examination of the instructions complained of, in view of the issues made by the pleadings and the proof disclosed by the record, and in the light of the authorities cited, is convincing that these instructions were in no manner prejudicial to plaintiff, and that reversible error cannot be predicated thereon.

In consideration of the last question, it is to be remembered that in this case the jury were the exclusive triers of the facts. They necessarily determined all questions of disputed fact disclosed by the evidence in the record, in the light of their examination and actual view of the *locus in quo*. Their determination thus made, at least so far as substantial evidence exists supporting their conclusions, is binding on this tribunal. In jury cases we are not triers of disputed facts, and the determination expressed in the jury's verdict, so far as the same is supported by competent evidence, is final and controlling.

Lot three (3) in block two (2), Dworak's Addition to Omaha is situated adjacent to the banks of a ravine. From this lot such ravine extends in a varying curve in a general southwesterly direction to its source. In a state of nature it had well-defined banks of some fifteen or more feet in depth. While the evidence does not clearly disclose the entire watershed which formed the limits of the basin drained by it, plainly it embraced territory on both sides of the depression. Tributary gulleys or depressions connected with it, and surface waters as far west as Twentieth street found their way to its bed. The evidence is also undisputed that all the surface waters now carried by the sewer complained of in a state of nature drained into its bed. It is expressly alleged by plaintiff, as a legal conclusion, that this ravine was not a natural ditch or watercourse, and had always

been a dry ravine without any water flowing into it until after the municipal improvement had been made. But, our statutory definition of a "watercourse" is: "Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook shall be deemed a watercourse." Comp. St. 1929, sec. 31-302.

In this situation, plaintiff complains of two sources of injury, viz.: (1) The washing away of the land by the waters in the gulley or ravine; and (2) the disagreeable odors arising from the channel of this watercourse due to the sewage caused to be deposited therein by the defendant city. But neither by pleading nor evidence is any particular sum allocated to each of these claims. The damages alleged are claimed as the result of both. There is approximately a distance of six hundred feet between the mouth or outlet of the municipal sewer into this ravine and plaintiff's property. No sewage from this sewer is cast directly on or against plaintiff's lot, except as it flows by in the well-defined channel formed by the gulley or ravine. The waters carried by the ravine flow southerly from this outlet. This ravine receives the surface waters of the entire basin drained by it. These united waters, derived from the sources mentioned, are carried in this well-defined channel to and along plaintiff's land. Evidence in the record sustains the conclusion that the quantity of water carried to and past plaintiff's land has not been materially increased as a result of the municipal improvement. Also, it appears that the banks of this ravine were subject to the washing of the current, and were crumbling and falling into the channel, long prior to the construction of the sewer system now under consideration. While this evidence is contradicted by some of plaintiff's witnesses, one of them testified on cross-examination, as follows:

"Q. Now, you come from Q street and as you go south of this (plaintiff's) property there is quite a drop down from the street? A. Yes; that is a gradual slope from down there. Q. In other words, the houses as you come down

south of Q street are built on a slope? A. Yes. Q. And Faiman's property is in the lowest portion? A. When you come to that ravine then you can't get up in lots of places at all. Q. You have checked over the dirt down here and seen where it was falling away? A. What? Q. Have you checked over the dirt in this bank and seen where it was falling away? A. I suppose it has been falling away there for fifty years. I seen that ravine thirty, forty years ago. Q. And the dirt was falling away then, wasn't it? A. Oh, some of it always does."

In short, the testimony as an entirety justified the conclusion by the jury that the "wash" of the waters carried by this ravine existed in a state of nature, and was not substantially increased by the city's improvement, and the plaintiff suffered no damages by reason thereof. There is no definite proof in the record of any specific damages occasioned by the odors arising from the channel, and, also, the evidence is conflicting as to whether the plaintiff has actually suffered any damage or injury in any way due to the improvement constructed by the defendant city.

Thus, it follows that the verdict of the jury is sustained by ample evidence, and the judgment based thereon is supported thereby. The judgment is, therefore,

AFFIRMED.