CORA M. HALL ET AL., APPELLANTS, v. CITY OF FRIEND ET AL., APPELLEES.

279 N. W. 346

FILED APRIL 29, 1938.   No. 30314.

*Albert S. Johnston,* for appellants.

*Joseph Ach* and *Edward J. Kubat, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

This is an action in equity to abate a public and private nuisance resulting from the operation of the sewer system of the city of Friend, and to enjoin the defendants from continuing to operate the system in such a manner as to continue the nuisance. Trial court denied injunction, and gave city 90 days to correct odors by chemical means or otherwise. Plaintiffs appeal.

It is alleged in the petition that the city of Friend is a municipal corporation of the second class, and that the other defendants are its mayor and members of the council; that the plaintiffs are the owners of certain lands situated in sections 25 and 26, township 8, range 1, in Saline county, Nebraska, and that the plaintiff Frank Olmsted is a tenant in possession of the northwest quarter of said section 25. All of the land of the plaintiffs lies to the south and east of the city of Friend.

It is further alleged that the said city constructed a sewage disposal plant, located on a part of the northwest quarter of the southeast quarter of section 23, and that a tile drain, laid underground, ran from said disposal plant in a southeasterly direction and emptied the contents thereof on the west side of a traveled highway, where it flows above the ground by gravity along the west side of the

highway, thence across an east and west road through a culvert, and from thence flows in a meandering course across the corner of the land owned by plaintiff Bert Cain in section 26, and from there crosses the north and south highway and flows upon the northwest quarter of section 25, and follows a meandering course across said quarter-section, near the south line of which it forms a small lake; that this water emitted foul and noisome odors, and constituted a nuisance upon the highway, as well as upon the lands belonging to the plaintiffs.

It is further alleged that the course over the lands of the plaintiffs followed a natural depression, which, however, only carried run-off water after heavy rains or snows, after which the fields could be cultivated across the bottom of the depression, but as a result of the continuous stream flowing from the disposal plant of the city of Friend, the plaintiffs were unable to farm a large area of their lands, which were thereby damaged as to their permanent value and use; that plaintiffs have not consented thereto, nor have any proceedings been had by eminent domain, nor has any compensation been paid for the use thereof; that the defendants have been requested to abate the nuisance, but have refused to do so; that there was no adequate remedy at law, and it was a continuing nuisance.

The defendants, for answer to this petition, admitted the incorporation of the city and the ownership and use of the lands by the plaintiffs; alleged that the disposal plant was constructed and completed and had been in operation for more than twelve years prior to the commencement of the action; that plaintiffs' alleged cause of action did not accrue within four years prior to the commencement of the action, and therefore said action was barred by the statute of limitations; that by reason of the open, notorious, peaceable, and uninterrupted use of said disposal plant and drainage ditch for more than ten years prior to the commencement of the action, the defendant city had acquired an easement of the right to drain waters into and across the plaintiffs' lands.

At the trial in the district court a decree was entered finding that no injunction should issue against the city of Friend. The court further found that the noxious odors emanate from low places, and granted the city of Friend a period of 90 days to correct such odors by chemical treatment, or other sufficient treatment as may be recommended by competent engineers, and, upon correction of said odors, on written motion the action will be dismissed.

The plaintiffs appealed, and set out as the errors relied upon that the finding of the court that there were no elements of damage other than the odors is contrary to the evidence; that the judgment is contrary to law, as it affords no adequate or permanent relief, and does not require defendants to prevent the recurrence of the conditions resulting therefrom, and that the judgment permits the defendants to continue to damage and interfere with the use of plaintiffs' lands without compensation, and constitutes a taking or damaging of plaintiffs' property for the use of the defendants without compensation, and contrary to the Constitution of the United States and the Constitution of the state of Nebraska.

The evidence discloses that for many years a gully or draw, known as Sucker creek, ran across the land on which the city of Friend is located, and that it meandered southeasterly across the lands described in the petition; that when the north and south road on the east side of section 23 was improved, instead of building two culverts and allowing Sucker creek to cross the road twice, it was confined in a ditch on the west side of the highway, and then ran in a culvert under the east and west road between sections 23 and 26, and then ran southeasterly, crossing the north and south road, and meandered across section 25 in a southeasterly direction, and that this Sucker creek finally runs into Turkey creek; that drainage from the city of Friend, and from land in sections 23, 26 and 25, flowed in this Sucker creek after a rain, or whenever snows melted, but that there was not a continuous stream flowing therein.

The evidence discloses that the city of Friend constructed

a sewage disposal plant in 1924 adjacent to this Sucker creek, and the defendants maintain by their evidence that nothing comes out of the disposal plant but clear water, and that all of the solids and organic matter are taken out of the sewage of the city, and that it is clear water that is continuously oxidyzed which runs down Sucker creek. This Sucker creek is deeper in some places, and in other places has a wide bottom, where the water stands at times and becomes stagnant and gives off noisome odor, and the evidence is somewhat conflicting whether the odor given off is such as is to be found coming from any stagnant pool of water, or whether it is accentuated by the fact that the water flowing from the disposal plant adds to the odor.

It was disclosed in the evidence that up to the time of the trial the city had never used any chemicals in the sewage disposal plant, but the decree of the trial court requires the city to adopt the latest approved method of taking out all objectionable qualities in this water, and requires the city to so deodorize it that it will not contain foul, offensive, or noxious matter, capable of causing a nuisance.

A large number of photographs have been introduced in evidence; and have been carefully examined by this court. These photographs disclose that after a heavy rain the flood waters would be sufficient to wash away the topsoil and destroy crops planted in this Sucker creek or gully, and it was testified by some witnesses that parts of this gully had never been cultivated in the bottom. It is clear from the evidence that, with water flowing continuously from the disposal plant, the bottom of the gully will at all times have some water standing in the low places.

In accordance with sections 31-301 and 31-302, Comp. St. 1929, owners of land may drain the same into a natural watercourse; a watercourse being any depression or draw two feet below the level of surrounding lands and having an outlet to a stream.

Our court has held that an owner has a right to protect his land from surface water, and to drain lagoons and basins thereon of a temporary character by discharging

such surface waters by means of artificial channels into a natural surface water drain upon his own property and through such drain on and over the land of another, provided such person acts in a reasonable and careful manner and without negligence. *Todd v. York County,* 72 Neb. 207, 100 N. W. 299. But when it was attempted to drain a lake in Cherry county of 150 acres in extent, and of a depth of five feet, this court said it could not be done. *Davis v. Beem,* 115 Neb. 697, 214 N. W. 633. See, also, *Davis v. Londgreen,* 8 Neb. 43.

In *Central Irrigation District v. Gering Irrigation District,* 122 Neb. 199, 240 N. W. 289, it was held that landowners, by the open, notorious, peaceable, uninterrupted, adverse possession, maintenance and use of a ditch discharging water into an irrigation canal for more than ten years may therefore acquire an easement for that purpose.

In *Bures v. Stephens,* 122 Neb. 751, 241 N. W. 542, it was held that an owner may drain in the natural course of drainage, discharging water into a natural watercourse, and that damages for use of an easement for a drainage ditch cannot be recovered by the owner of the servient estate against the owner of the easement, unless the owner is negligent in its use.

The case of *Faiman v. City of Omaha,* 131 Neb. 870, 270 N. W. 484, was an action for damages to real estate occasioned by the discharge of sewerage into a ravine adjacent to the property of plaintiff. This ravine received all the surface waters of the entire basin drained by it, which were carried in a well-defined channel. It is said in the opinion that there is no definite proof of any specific damages occasioned by the odors arising from the channel, and that the evidence is conflicting as to whether the plaintiff has actually suffered any damage or injury in any way due to the improvement constructed by the city; that the verdict of the jury is sustained by ample evidence.

In *Stuhr v. City of Grand Island,* 120 Neb. 491, 233 N. W. 886, it was held: "While a court of equity may enjoin such manner of construction or operation of a sewer system as

causes or results in a nuisance, yet it will not perpetually enjoin the construction or operation of the system if so changed as not to cause or create a nuisance."

In 9 R. C. L. 694, sec. 87, it is said: "Where the nuisance has not been judicially established there must be clear and satisfactory evidence that it exists before an injunction will be granted to restrain a municipality from discharging its sewage into a stream. The courts will consider, among other things, whether an injunction against the use of a stream as a sewer outlet will destroy the sewerage system and subject the public to serious inconvenience and will be slow to grant injunctions when to do so would be to deprive a municipality of the only available means of disposing of its sewage. Certainly the injunction will be refused if it is possible to make full compensation in money. Nor generally will an injunction be granted in such form as to take effect until such subsequent time as will allow the municipality reasonable opportunity to change the manner of its sewage disposal."

In *City of Valparaiso v. Hagen,* 48 A. L. R. 707 (153 Ind. 337, 54 N. E. 1062, 74 Am. St. Rep. 305), it was held: "A city cannot be enjoined from discharging sewage into a stream, when it acts skilfully and in conformity to statute, and the stream constitutes the only natural and reasonably possible line of drainage." And also that "The lessening of the value of an estate by destruction of the grass and the creation of some personal discomfort to the owner by the discharge of sewage therein is not such a taking of his property as entitles him to compensation, where the damage results from the discharge of sewage into a stream by a city in a skilful manner and in conformity to statute, since the damage is merely consequential."

This case being closely in point in some features, we will state the facts. Salt creek was the natural watercourse flowing through the city, and connects with a river. A sewerage system was constructed at a cost of $50,000, and about 47,000 gallons of sewage are daily discharged into a marsh, which connects with Salt creek. The Indiana court

said generally that a city may open and improve streets and construct gutters, and if storm water carries filth and garbage incident to a city into natural channels to the general watercourse of that basin, the right of the municipality to permit it will not be doubted, even though the waters of the stream are thereby polluted. However, the city must take such action with a cautious regard for the rights of those below. There was no other possible outlet or practical means of disposing of sewage; hence, to forbid a discharge of sewage into Salt creek is to deny to the city the right to discharge it anywhere, and thus leave it without the ordinary means of sanitation. The facts present a case wherein the principle of the greatest good to the greatest number must be permitted to operate, and private interests must yield to public good, and if the erection has been skilfully performed and without negligence, and in a way to do the least mischief, it must be held to be a lawful exercise of power that equity will not restrain. The construction of sewers and outlets is sanctioned by law, and what the law grants will not constitute a nuisance *per se,* public or private, and if the law is obeyed no actionable wrong will result.

This case, involving the city of Valparaiso, Indiana, was released in 1899. In the many years since that time, extensive improvements have occurred, so that municipalities need no longer discharge rank sewage into a creek, as was done in that case.

In the case at bar, the disposal plant of the city of Friend was built in 1924 by a civil engineer who testified he had built 30 sewer plants. He described this plant of the city of Friend as follows: The disposal plant is two stories in height; the upper story is the sedimentation chamber, the lower is a digestion chamber. The effluent comes into a screen chamber, and the sewage falls over a weir into the sedimentation chamber, in the bottom of which solids settle. It is dumped onto filter beds, composed of crushed rock six feet in depth, and then percolates into the underdrain system, goes into a collecting or after-sedimen-

tation chamber, and from this the water which is left goes down to Sucker creek. The flow is 30,000 to 40,000 gallons a day. The solids which settle down are digested by bacteria in the digestion chamber, and then are taken out and placed on a sludge-bed, then these solids are dried.

The chemical examination by the State University of Nebraska of the effluent shows that the disposal plant is functioning in a proper manner.

The trial court granted the city of Friend a period of 90 days to correct any improper odor by chemical treatment, or other sufficient treatment as might be recommended by competent engineers, and, upon the correction thereof, on written motion the action will stand dismissed.

From an examination of the entire record, we find no prejudicial error, and the judgment of the trial court is

AFFIRMED.