ANN NEMETZ, APPELLEE, v. FRANK NEMETZ, APPELLANT.

22 N. W. 2d 619

FILED APRIL 26, 1946. No. 32024.

*S. L. Winters* and *J. J. Krajicek*, for appellant.

*Hotz & Hotz, Gordon Diesing,* and *Gilbert S. Brown,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

In this action plaintiff sought a decree quieting title in her as a joint tenant with right of survivorship with the defendant in certain real property. A warranty deed to the property, commonly referred to as a joint tenancy deed, named "Frank Nemetz and Anna Nemetz" as grantees. The question presented is whether or not the "Anna Nemetz" named in the deed is the plaintiff, or the mother of the plaintiff and defendant. The trial court entered a decree for the plaintiff. Defendant appeals. We affirm the judgment of the trial court.

As is not unusual in this type of case, the evidence offered by the parties is in conflict in many respects.

The plaintiff and the defendant are sister and brother, and both of mature years. The widowed mother, plaintiff, defendant, and a widowed sister of the parties with two children lived from 1936 to 1941 in a home on South Twenty-third Street in Omaha. The mother was of advanced years and practically blind. The family was of Bohemian ancestry. The Bohemian spelling of the name was "Nemec." The mother so spelled her name. Plaintiff and defendant adopted the spelling of "Nemetz."

The plaintiff and the defendant were wage earners. Each

contributed to the support of the home, in money and labor. Defendant paid the cost of some repairs on the home on South Twenty-third Street and some of the taxes.

In April 1938, the defendant had an attorney call on his mother. The attorney testified that he prepared two deeds at the request of the mother. The one conveys the Twenty-third Street property from the mother to plaintiff, under the name of "Anna Nemec," widow grantor, to "Anna Nemec," daughter. The deed bears the admitted signature of the mother and is witnessed by two parties and bears the usual notary's acknowledgment. The other deed is a joint tenancy deed from "Anna Nemec, Single," grantor, to "Anna Nemec, and Frank Nemec, Mother and Son." It bears a signature "Anna Nemec" and is witnessed and acknowledged as is the first deed. The attorney testified that he explained to the mother that the purpose of the deeds was to transfer the property to the mother and son as joint tenants; that he knew the family spelled the name "Nemec"; and that the mother and plaintiff signed the deeds in his presence. They were neither witnessed nor acknowledged at that time. The acknowledgments and witnesses were secured by the defendant later and then the instruments were recorded. Plaintiff testified that she knew her mother signed a paper intended to protect defendant in taxes paid. She testified positively that she did not sign the deed above referred to, and did not know of its existence until after this litigation began. Plaintiff offered an expert witness who testified that in his opinion the signature to the deed was not written by plaintiff.

The Twenty-third Street property was sold in 1941. Defendant handled the transaction and had possession of the proceeds. Defendant negotiated the purchase of the property here involved. He paid the proceeds of the Twenty-third Street property upon the purchase price.

The grantor testified that defendant and plaintiff, with a real-estate agent, inspected the property and defendant told the grantor that he wanted to buy a home for himself

and his sister. This defendant denies. The real-estate agent testified that he understood defendant was buying a home for himself and his mother. At the direction of defendant the grantees' name was spelled "Nemetz" in the deed of conveyance. Plaintiff testified that before the property was purchased the mother told her in defendant's presence that she was giving the property to plaintiff and defendant. The family then moved into the property and made it their home. Plaintiff testified that thereafter the mother told her the property was "Frank's and mine." Defendant denied this testimony.

A sister of the mother testified that in August 1941, the mother told the witness that she, the mother, had given the property to plaintiff and defendant and that again in January 1942, she made the same statement to her. This evidence was received over defendant's objection.

The mother died January 20, 1942. A month later defendant had prepared and filed an affidavit in the register of deed's office reciting the death of his mother and that she was the joint tenant in the deed, and attached to the affidavit a certificate of death, wherein the name was "Anna Nemetz (Nemec)." He did not advise his sister of the deed or the filing of this affidavit.

Thereafter the plaintiff and defendant lived in the home until the defendant went into the Army in 1942, and again lived in the home after his discharge in 1943. In the meantime the plaintiff lived in the home alone. Sometime after defendant's return in 1943, he announced his purpose of marrying a widow with two children. Up to this time the family had lived together in harmony. Plaintiff testified that she protested; that she and defendant quarreled about the bringing of another woman with children into the home; but that they agreed to try it. Defendant was married March 9, 1944, and brought his wife and her children into the home. The real trouble then began. Defendant ordered the plaintiff out of the home. Plaintiff testified that she asked that the property be sold and the proceeds divided. Defendant testified plaintiff never claimed

to own any part of the property. There is no evidence that she at that time knew of the provisions of the deed. There was considerable quarreling and some physical violence by defendant to plaintiff. Finally on August 5, 1944, defendant and wife served an OPA notice to vacate. Plaintiff moved out and then consulted a lawyer for the first time.

The attorney advised plaintiff to file a petition for the probate of her mother's estate and have an administrator appointed who could then investigate the property situation and advise plaintiff as to her rights. A petition was prepared reciting that the mother died possessed of real property valued at $4,000. This referred to the property involved. Plaintiff signed the petition. The administrator was appointed and upon investigation discovered the condition of the title and advised this action.

The record shows that at all times the mother, and in the probate of his estate the father, used the Bohemian spelling of the name as "Nemec." It was so used in the title to the Twenty-third Street property, in the mother's lodge books, and building and loan books. The defendant had the name so spelled on the mother's tombstone. Plaintiff in her employment, social security registration, and generally, used the spelling "Nemetz." She testified that she was so baptized. However, in grade school she was carried at one time on the records under the name "Nemec." She so signed a receipt in the probate of her father's estate. If the signature on the deed to the Twenty-third Street property is hers, and that we do not find it necessary to decide, she so used it there. In those instances compliance was had with the name used in the proceedings and title.

Plaintiff in her petition alleged, so far as material here, that the mother purchased the property involved for the plaintiff and defendant in consideration of the care, maintenance, and support which she had received for many years; that the deed was to the plaintiff and the defendant; that the plaintiff and the defendant resided in the premises until plaintiff was forced to leave the same; and that de-

fendant claimed to be the full and absolute owner of the premises. Plaintiff prayed for a decree quieting title in her as joint tenant with right of survivorship with defendant, for a writ for right of possession, and for equitable relief. Defendant's answer was a general denial.

Considering this evidence de novo we find that the grantor of this property understood that plaintiff and defendant were the grantees in the deed; and that while there is no evidence that the mother ever knew of the deed, yet she intended and understood that the title to the property had vested in plaintiff and defendant. We further find that the defendant, by the use of the name "Nemetz," which he knew was not the way the mother spelled the name, intended that the title was to vest in plaintiff and himself. Without question the mother had a substantial interest in the consideration that went to pay for this property. The trial court had the opportunity of hearing the witnesses testify, observed their demeanor on the witness stand, and resolved questions of disputed testimony in favor of plaintiff. We reach the same findings and conclusions as did the trial court.

In argument defendant contends that the testimony of the aunt as to what was told to her by the mother was incompetent and not to be considered here. Plaintiff counters with the proposition that the defendant did not make a motion for a new trial and that the question of the competency of the evidence cannot now be raised.

"In an equity case appealed to this court, if it is desired to review alleged erroneous rulings of the trial court as to the reception of evidence, a motion for a new trial must be filed and overruled in the district court." Farmers Loan & Trust Co. v. Joseph, 86 Neb. 256, 125 N. W. 533. This rule was followed in Brady v. McGinley, 94 Neb. 761, 144 N. W. 780, wherein we stated that the motion for a new trial was necessary "so that the attention of the district court may be called to the same and he be given an opportunity to correct any material error before recourse is had to this court for a new trial." See, also, Bowers v.

Raitt, 96 Neb. 460, 148 N. W. 93; Hall v. Bowers, 117 Neb. 619, 222 N. W. 40, 225 N. W. 49, wherein we said "that is the settled rule"; Stuhr v. City of Grand Island, 120 Neb. 491, 233 N. W. 886; Sutherland v. Sutherland, 132 Neb. 558, 272 N. W. 549. The rule has been stated many times. We last did so in Oertle v. Oertle, 146 Neb. 746, 21 N. W. 2d 447.

The rule, as applicable to a case such as the one now before us, means that where the district court received evidence over objection and a motion for a new trial is not made, and the evidence is here "preserved in the bill of exceptions" (§ 25-1925, R. S. 1943), this court upon trial de novo shall consider it and give it whatever probative value it may have in reaching a conclusion upon the fact issues involved. We have so weighed the evidence of the aunt.

The judgment of the district court is affirmed.

AFFIRMED.