W. G. McCubbin, appellant, v. Village of Gretna,
Nebraska, appellee.

116 N. W. 2d 287

Filed July 6, 1962. No. 35165.

Eisenstatt & Lay, for appellant.

Wells, Martin, Lane, Baird & Pedersen, for appellee.

Heard before Simmons, C. J., Messmore, Yeager,
Spencer, Boslaugh, and Brower, JJ., and Chadderdon,
District Judge.

Chadderdon, District Judge.

W. G. McCubbin commenced this action against the
Village of Gretna to permanently enjoin it from running
the discharge from a sewage disposal plant erected by
the village across his land described as the northeast
quarter and the east half of the northwest quarter

of Section 35, Township 14 North, Range 10 East of the 6th P. M., in Sarpy County, Nebraska, which is located north and west of the village, which discharge, he alleges, contains excess water, refuse, and material which collected on the plaintiff's land causing a swampy area and creating offensive odors, attracts flies, mosquitoes, and insects causing an unhealthy condition, and prevents the plaintiff from moving farm machinery from one part of the farm to another. The plaintiff further alleges that the value of his farm has decreased and that the flow from the sewer plant is a nuisance.

The Village of Gretna in its answer alleges that said sewage disposal plant was built in accordance with plans approved by the Department of Health of the State of Nebraska and is free from odors; that its discharge from the sewer plant flows into a natural watercourse fed by springs; that the deposits on plaintiff's farm is caused by sediment from fields and barnyards in the natural drainage basin of the watercourse; that ground water level and improper farming operations of the plaintiff have caused the swampy area; that it has a perpetual easement granted by the former owner of the land; and that the damage to the land, if any, occurred before the purchase of the land by the plaintiff.

The parties agree that the matter of damages was a matter incidental to the equitable and injunctive relief sought so that it could be disposed of by the court without a jury.

The trial court found for the defendant and, among other things, found that the creek in question was a spring-fed watercourse; that the plaintiff was entitled to use it for the discharge from its sewer plant; that the treatment plant was properly constructed and efficiently operated; that there was no offensive odor, flies, or mosquitoes resulting from the discharge of the sewer plant; that such an operation was not a nuisance; that the defendant had acquired no right to use the watercourse

for all times and under all circumstances; that the former owner had been paid for constructing a ditch through his land; that plaintiff was in the same position as the former owner; that these findings apply only so long as defendant operates its present treatment plant within its capacity and in an efficient manner; and that if at a future date a change is made, the plaintiff could apply to the court for appropriate relief.

W. G. McCubbin will hereafter be referred to as plaintiff, and the Village of Gretna will hereafter be referred to as defendant.

In order that we may understand the problem before us we shall set forth certain matters of evidence as shown by the bill of exceptions. The evidence is not in conflict except in a few instances and, although this case is tried de novo in this court, the rule announced in Walla v. Oak Creek Township, 167 Neb. 225, 92 N. W. 2d 542, applies, which rule is: "There is a good deal of evidence relating to material matters that is in irreconcilable conflict. We have often stated that: 'Actions in equity on appeal to this court, are triable de novo, subject, however, to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite.' Wiskocil v. Kliment, 155 Neb. 103, 50 N. W. 2d 786. See, also, Town of Everett v. Teigeler, supra; Mader v. Mettenbrink, supra; Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602."

The trial court, by agreement of the parties, viewed the premises at the time of the trial. This court in Walla v. Oak Creek Township, *supra*, said: "At the conclusion of the trial appellants' counsel requested the trial court to view the premises, which request the trial court granted. In view thereof the following has application: 'The trial court is required to consider any competent

and relevant facts revealed by a view of the premises as evidence in the case, and a duty is imposed on this court on review of findings made by the trial court to give consideration to the fact that the trial court did view the premises; provided, that the record contains competent evidence to support the findings.' Mader v. Mettenbrink, supra. See, also, Town of Everett v. Teigeler, supra."

Defendant in 1951 employed an engineering firm to design a sewer treatment plant. This firm designed such plant, the plans were approved by the Department of Health and the State of Nebraska, federal funds were obtained, the plant was built and completed on March 27, 1953, and began its operation soon thereafter. This is what is called a complete treatment plant which has an efficiency of approximately 90 percent. There has been no metering of the flow but the engineers estimated that the flow would be 15,000 gallons per day. The plant was designed so that the water from the plant would fill a tank, when the tank was full this water would be dumped, and there would be no flow until the tank refilled. At different times of the day the flow was more rapid than at other times. The plant at the time of the trial was utilizing approximately 20 to 25 percent of its hydraulic capacity and was being operated efficiently.

The water from the plant was drained into a waterway that was fed by springs and drained an area of land. After rains and after the snow melted a considerable amount of water ran down this waterway. The spring in this waterway was just east of the sewer plant. The water ran generally west and, after going through a culvert under the railroad track and the county road, entered the land of the plaintiff and flowed over the farm land for some distance, then into a gully, and on into the Elkhorn River. At the time this plant was built in 1953 this land was owned by Hugo Schnack who sold it to the plaintiff and possession was surrendered on March 1, 1959. There is some conflict in the evidence

about the flow of water during the summer when there was no rain. Schnack testified that he planted corn in the area from the east side of his land to the gully and, except for a few days after a rain, he could find a place to cross this waterway with farm implements, but after the installation of the sewer plant there were times when he could not go across it with farm machinery. Before the installation of the sewer plant the course of the water through the farmland would change due to debris coming down with the drainage water and sometimes there were deposits of 8 or 9 inches of silt, although there was evidence that several years before there was a well-defined channel. Some members of the village board called on Schnack and asked him what they could do to make it all right with him for the sewer going through his land. He said: "If you put me a ditch through there I will—and I don't have no damages from livestock maybe getting poisoned or any chemicals or any other damages, * * *. I don't want anything for it." The defendant tried to get the ditch dug and could not do so. Later Schnack employed a man to dig the ditch at a cost of $270, and the defendant gave him a check for $300. The defendant also asked him to sign an easement, which he refused to do, saying that he would rather give back the money than to sign the easement. The plaintiff purchased the land from Schnack but did not know that the water from the sewer plant was running across the place until March of 1959. At the time of the trial the land was in the soil bank with the area from the culvert under the road on the east side of the plaintiff's land to the gully planted to brome grass and alfalfa. It had been difficult for the plaintiff to plow this land to seed it and also difficult to mow, which was necessary under the soil bank agreement. There was some evidence that at some times there was an offensive odor from the water but about 2 months before the trial the defendant commenced using a chemical called Sol-Vax for this odor. There was much other testimony and many exhibits in-

troduced, all of which have been studied by this court. We think that this is a sufficient summary of the evidence for a decision by this court except to say that the plaintiff offered no testimony that there was any other way to dispose of the water from the sewer plant than to suggest that a lagoon system might have been used, and there was no showing that the soil was of the kind necessary to make such a system efficient.

After a motion for new trial was overruled the case was appealed to this court.

The first assignment of error is that the court erred in finding that there was no unlawful diversion of water by the defendant upon the plaintiff's land. This assignment is not good. The plaintiff's petition did not allege that the defendant unlawfully diverted water but at the close of the plaintiff's evidence the plaintiff moved to amend his petition by adding to the petition in several paragraphs the words, "unlawfully diverted," so that the petition would have read, "unlawfully diverted water," arguing that this would make the petition conform to the proof. This motion was overruled by the court. The overruling of this motion is not set out as an error in the brief of the plaintiff. Since the rules of this court provide that errors not assigned nor discussed will not be considered, the overruling of this motion by the court cannot be here considered. Trute v. Skeede, 162 Neb. 266, 75 N. W. 2d 672. Because of the overruling of the motion to amend the pleadings which was overruled the issue of "unlawfully diverted water" was not presented to the trial court and the plaintiff cannot assign an error which was not before it. Sleezer v. Lang, 170 Neb. 239, 102 N. W. 2d 435.

The other assignments of error, being five in number, will be considered together because they are all related and have to do with the right of the defendant to run the effluent from the sewer plant across the land of the plaintiff and whether the plaintiff had the right to revoke any

rights which the defendant had acquired after he, the plaintiff, purchased the land.

There is no assignment of error because the trial court failed to assess damages and what has been previously said in this opinion about assignment of error number one applies to the matter of damages so that it is not considered in this court.

In Richardson v. Kildow, 116 Neb. 648, 218 N. W. 429, the court said: "The writ of injunction is not wholly a writ of right, and may be withheld, in the discretion of the court, when it is likely to inflict greater injury than the grievance complained of; this principle is specially applicable where the interests of the public are involved." Also in Hall v. City of Friend, 134 Neb. 652, 279 N. W. 346, the court said: "Courts will consider, among other things, whether an injunction would not destroy the sewer system of a city, and subject the public to serious inconvenience and danger. * * * Under the facts in this case, the erection of a sewage disposal plant having been properly done, without negligence, it will be held to be a lawful exercise of power that equity will not restrain."

There is no doubt that the defendant had the right of eminent domain and could have obtained an easement over this land for the flow of the sewer effluent but instead it elected to pay the owner of the land for the digging of a ditch which was all he wanted and thereby acquired a right which could not be revoked or canceled by the owner. In Martin v. Fillmore County, 44 Neb. 719, 62 N. W. 863, the court said: "Land is appropriated when its corpus is seized and devoted to the improvement so as to deprive the owner of the use of the land. The nature of the estate in the land which is appropriated may possibly affect the amount of recovery, but does not affect the right to recover." See, also, Stuhr v. City of Grand Island, 120 Neb. 491, 233 N. W. 886. The plaintiff purchased this land with the effluent flowing through it which gave him notice that the defendant claimed

some right, even though he did not discover it until after the purchase, which indicates only that he might have been negligent in his inspection of the land.

The appropriation of this land for the operation of the sewer plant of the defendant was made, but only so long as the plant was used as constructed. Since the defendant acquired the right to run the sewer effluent from the plant then in operation, if the plant is enlarged or put to any other use, then the plaintiff would be entitled to any damage he might sustain by reason of the enlargement or the improper use of the plant, which is the finding of the trial court and which finding we think is correct.

In the light of these observations, we conclude that the judgment of the district court should be affirmed.

AFFIRMED.