C. RONALD LAMBERT AND CHARLOTTE K. LAMBERT, APPELLANTS, AND SANITARY AND IMPROVEMENT DISTRICT NO. 5, APPELLEE, V. JAMES J. HOLMBERG AND MARY LOU HOLMBERG, APPELLEES.

712 N.W.2d 268

Filed April 21, 2006. No. S-04-1334.

James G. Egley, of Moyer, Moyer, Egley, Fullner & Montag, for appellants.

Kristopher J. Covi, Mark F. Enenbach, and Thomas O. Kelley, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees James J. Holmberg and Mary Lou Holmberg.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an equitable action seeking injunctive relief for a repeated and continuous trespass involving a private sewerline. The district court for Platte County determined that James J. Holmberg and Mary Lou Holmberg committed an indirect trespass when they connected the sewerline from their home to a public sewer system which ultimately connected to a private sewerline owned by C. Ronald Lambert and Charlotte K. Lambert. The court determined, however, that the Lamberts were not entitled to injunctive relief because they failed to prove substantial damages. Although we determine on de novo review that a direct or traditional trespass occurred, we conclude that the Lamberts have an adequate remedy at law and are not entitled to injunctive relief.

## FACTS

The Holmbergs are the owners of a residence located in Columbus, Platte County, Nebraska. Sanitary Improvement

District No. 5 (SID 5) is located to the east of the Holmberg residence, across 48th Avenue. In approximately 1973, the Lamberts developed the Hillside Estates subdivision, which is located south of SID 5 and southeast of the Holmberg residence. The Lamberts also own undeveloped property located to the south of Hillside Estates. When developing Hillside Estates, the Lamberts constructed roads and laid sewerlines in the subdivision.

In 1973, the Lamberts dedicated the Hillside Estates subdivision and 60th Street located therein. In the deed of dedication, the Lamberts specifically dedicated to the perpetual use and benefit of the public each of the strips set out and designated in the subdivision as public roads, and further granted perpetual easements as shown on the plat for the installation and maintenance of utilities to serve the owners of the subdivision lots. The dedication was accepted by Platte County and the city of Columbus. Neither the deed of dedication nor the resolutions of acceptance provided the Lamberts any exclusive rights to the sewers or other utilities and roads dedicated to the use and benefit of the public.

A sanitary sewerline located beneath the dedicated streets of the Hillside Estates subdivision crosses the southern boundary of the subdivision and then extends east across the undeveloped property owned by the Lamberts. The line running across this undeveloped Lambert property extends 1,872 feet before connecting with the sewerline maintained by the city of Columbus. This 1,872-foot section of "private" sewerline is the site of the alleged trespass.

In 1980, the Lamberts entered into a perpetual hookup agreement which authorized SID 5 to connect its system of sewers to the sewerline running across the Lamberts' private property for the purpose of conveying SID 5 sewage to the sewer main owned by the city. SID 5 paid the Lamberts $16,280 and agreed to be proportionately responsible for future maintenance of the Lamberts' sewerline. In 1987, the Lamberts entered into a similar perpetual hookup agreement with Sanitary Improvement District No. 9 (SID 9), which permitted that district to also run its sewage through the Lambert line prior to connecting with the sewer main owned by the city. SID 9 is located north of the Holmberg residence and northwest of SID 5. Under the agreement, SID 9 paid

the Lamberts $16,000 and agreed to be proportionately responsible for future maintenance of the sewerline.

The Lamberts also developed an area directly north of SID 5 known as Country Shadows. In 1994, the Lamberts connected the Country Shadows sewer system to the SID 5 sewer system without first securing the permission of SID 5. As a result of negotiations, the Lamberts subsequently paid $14,070 for the right to connect the Country Shadows sewer system to that of SID 5.

In October 2000, the Holmbergs notified SID's 5 and 9 and the Lamberts of their desire to connect to an existing sewerline located beneath 48th Avenue, which lies to the east of the Holmberg residence and to the west of SID 5, Hillside Estates, and the undeveloped Lambert property. Sewage entering at this connection point would necessarily pass through the Lamberts' private sewerline prior to entering the city's sewage system. The Holmbergs expressed a willingness to pay fees similar to those paid by other homeowners in the area. The Lamberts refused to grant permission to use the private line.

In November 2000, the Holmbergs received a permit from the city of Columbus allowing them to connect to the city sewer system. The Holmbergs also acquired a permit from Platte County allowing them to construct their sewer hookup across 48th Avenue. The Holmbergs then hired a contractor and, at their own expense, connected to the existing sewerline located beneath 48th Avenue. The point of connection is beneath a public roadway and is not within the geographic boundaries of SID 5 or any property owned by the Lamberts. However, sewage entering at this connection point eventually and necessarily passes through the segment of private sewerline owned by the Lamberts before it reaches the city sewer system.

The Lamberts brought this action alleging that the Holmbergs' use of the Lamberts' private sewerline constitutes a repeated and continuous trespass entitling the Lamberts to injunctive relief. SID 5 later joined in the petition. After conducting an evidentiary hearing, the district court concluded that because the sewer connection was not on property owned by either the Lamberts or SID 5, there was no direct trespass committed. The court reasoned that the action was instead one for indirect trespass and

refused relief after concluding that the Lamberts failed to prove they suffered substantial damages. The Lamberts filed this timely appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). SID 5 has not joined in the appeal.

## ASSIGNMENTS OF ERROR

The Lamberts assign that the trial court erred in (1) finding that the Holmbergs' use of the Lamberts' sewerline is not a case of direct trespass, (2) adopting the doctrine of indirect trespass and requiring the Lamberts to prove substantial damages, (3) applying the doctrine of indirect trespass to a case which bears no relation to the line of cases out of which the doctrine arose, and (4) determining that the Lamberts did not prove substantial damages.

## STANDARD OF REVIEW

■ An action for injunction sounds in equity. On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003).

## ANALYSIS

### TRADITIONAL OR INDIRECT TRESPASS?

■ The Lamberts assert that the district court erred in finding that an indirect trespass occurred. They argue that the action is instead based upon a direct or traditional trespass theory as defined by our case law and the Restatement (Second) of Torts § 157 et seq. (1965). To bring an action in trespass, the complaining party must have had title to or legal possession of the land when the acts complained of were committed. *Dugan v. Jensen*, 244 Neb. 937, 510 N.W.2d 313 (1994). It is undisputed that the Lamberts have legal possession of the private sewerline. However, the district court concluded that the possession requirement was not established by the Lamberts in the instant case because the geographic point at which the Holmbergs connected to the sewer was not on the Lamberts' property and was instead beneath a

public street. See Neb. Rev. Stat. § 39-1404 (Reissue 2004) (no private party may acquire interest in any part of city street).

The geographic point of connection is not outcome determinative because liability for trespass exists if an actor intentionally "enters land in the possession of [another], or *causes a thing* or a third person to do so." (Emphasis supplied.) Restatement, *supra*, § 158(a) at 277. The Holmbergs' connection to the sewerline beneath 48th Avenue clearly and necessarily causes sewage to enter and pass through the privately owned sewerline beneath the undeveloped Lambert property. Although the entry was not direct and immediate, it nevertheless amounted to a trespass because an "actor, without himself entering the land, may invade another's interest in its exclusive possession by throwing, propelling, or placing a thing either on or beneath the surface of the land." Restatement, *supra*, § 158, Comment on Clause (a)*i.* at 278. Further, "it is not necessary that the foreign matter should be thrown directly and immediately upon the other's land. It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter." *Id.* at 278-79.

Without expressly stating these principles, we have applied them in analogous situations. In *Lackaff v. Bogue*, 158 Neb. 174, 62 N.W.2d 889 (1954), the plaintiffs constructed ditches in order to divert water from two lakes. Although the ditches were constructed entirely on the plaintiffs' land, they caused the lake water to drain over the defendants' land. The trial court found a trespass had occurred and entered an injunction requiring the plaintiffs to fill the ditches, and we affirmed. Similarly, in *Faught v. Platte Valley Public Power & Irri. District*, 147 Neb. 1032, 25 N.W.2d 889 (1947), we affirmed a decision ordering an irrigation district to increase the carrying capacity of a canal located on the district's property after the negligent design of the canal caused floodwaters to trespass onto a farmer's land.

In a case involving facts similar to those of this case, the Supreme Court of Alabama applied a traditional trespass analysis and found that the repeated dumping of sewage into a private line by way of a separate private line was a continuous trespass. *Underwood v. West Point Manufacturing Company*, 270 Ala. 114, 116 So. 2d 575 (1959). Other jurisdictions have similarly applied

a traditional trespass theory, even when the act alleged to constitute a trespass occurred away from the complaining landowner's premises. See, *Miller v. Carnation Company*, 33 Colo. App. 62, 68, 516 P.2d 661, 664 (1973) (interpreting Restatement (Second) of Torts § 158 (1965) and finding that "landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property"); *Western Union Telegraph Co. v. Bush*, 191 Ark. 1085, 1090, 89 S.W.2d 723, 725 (1935) ("[i]t is sufficient if the wrongdoer actually set in motion some dangerous agency which in itself, though far distant from the wrongdoer, inflicts a wrong, such is a 'breaking of the close,' and for such trespass relief is granted").

The Holmbergs rely on *Cornwall v. Garrison*, 59 Idaho 287, 81 P.2d 1094 (1938), in support of their argument that the instant case involves only an indirect trespass. In that case, the court held that one who constructs a sewer beneath a city street is not the owner of the sewer and thus cannot enjoin its use by another. This holding is factually inapplicable to the instant case because it is undisputed that the Lamberts do have a private ownership interest in at least one portion of the sewer system through which the Holmbergs are emitting waste material. Moreover, the Lamberts' private sewerline is not located beneath a public street. The rationale of *Cornwall* thus does not aid us in resolving the instant dispute.

This court has never considered whether to recognize the doctrine of indirect trespass. We need not do so here because we conclude that the record establishes that the Holmbergs' act of connecting to the sewer system beneath 48th Avenue constituted a trespass on the Lamberts' property under traditional trespass principles. Sewage released by the Holmbergs at the connection point necessarily passes through the Lamberts' private sewerline before reaching the city sewer system, and thus it is more than a "substantial certainty" that the connection will ultimately result in a trespass on the Lamberts' private line. See Restatement, *supra*. When the sewage emitted from the Holmberg residence ultimately enters the Lamberts' private sewerline, it constitutes a continuous and repeated trespass on that segment of sewerline located beneath the Lamberts' undeveloped property, inasmuch

as a trespass can be committed on, above, or beneath the surface of the land. See Restatement, *supra*, § 159.

### PROPRIETY OF INJUNCTIVE RELIEF

■ An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Harders v. Odvody*, 261 Neb. 887, 626 N.W.2d 568 (2001); *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999).

■ When simple acts of trespass are involved, equity generally will not act. See *Harders, supra*. However, where the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land, an injunction will be granted. *Id*. Where an injury committed by one against another is continuous or is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and the injury will be prevented by injunction. *Lackaff v. Bogue*, 158 Neb. 174, 62 N.W.2d 889 (1954). In such cases, equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief. *Id*. An adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Standard Oil Co. v. O'Hare*, 122 Neb. 89, 239 N.W. 467 (1931).

In other cases involving continuous and repeated trespasses, we have concluded that injunctive relief was proper without requiring the landholder to show anything other than nominal damages. *Harders, supra* (adjacent landowners properly enjoined from using farm lane even though use did not harm landholder); *Thomas v. Weller*, 204 Neb. 298, 281 N.W.2d 790 (1979) (injunction proper where one repeatedly moved sand in duckblind, even though no evidence of damage or irreparable harm); *Van Donselaar v. Conkey*, 177 Neb. 169, 128 N.W.2d 390 (1964) (injunction proper to prevent repeated trespass on farmland); *Jurgens v. Wiese*, 151 Neb. 549, 554, 38 N.W.2d 261, 264 (1949) ("[e]quity will interfere by injunction to prevent destruction of a

hedge . . ."); *Fenster v. Isley*, 143 Neb. 888, 11 N.W.2d 822 (1943) (injunction proper against one who continually trespassed upon land to harvest).

Case law from other jurisdictions also generally supports the award of injunctive relief in situations involving repeated trespasses into sewer systems. For example, in *Underwood v. West Point Manufacturing Company*, 270 Ala. 114, 116 So. 2d 575 (1959), the homeowner's action in connecting to a private sewerline was held to be a continuous trespass for which there was no adequate remedy at law, entitling the owner of the sewer system to injunctive relief. See, also, *Newport Manor v. Carmen Land Co.*, 82 So. 2d 127 (Fla. 1955) (builder of private sewer can compel unauthorized user to disconnect); *Atkinson Trust & Sav. Bank v. DeRoo*, 332 Ill. App. 251, 75 N.E.2d 46 (1947) (injunction proper to prevent tap into a private drain where connection would cause overload); *Kittrell v. Angelo*, 170 Ark. 982, 282 S.W. 363 (1926) (same).

 However, a continuous and repeated trespass does not automatically demand injunctive relief, because an action for injunction sounds in equity. See, *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003); *Stoetzel & Sons v. City of Hastings*, 265 Neb. 637, 658 N.W.2d 636 (2003). Equity is not a rigid concept, and its principles are not applied in a vacuum. Rather, equity is determined on a case-by-case basis when justice and fairness so require. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). Moreover, the writ of injunction is not a "'writ of right,'" and, particularly when the interests of the public are involved, may be withheld "'when it is likely to inflict greater injury than the grievance complained of.'" *McCubbin v. Village of Gretna*, 174 Neb. 139, 145, 116 N.W.2d 287, 291 (1962). Stated another way,

> [a] court of equity can never be justified in making an inequitable decree. If the protection of a legal right even would do a plaintiff but comparatively little good and would produce great public or private hardship, equity will withhold its discreet and beneficent hand and remit the plaintiff to his legal rights and remedies.

*McCann v. Chasm Power Co.*, 211 N.Y. 301, 305, 105 N.E. 416, 417 (1914).

The function of the sewerline at issue in this action is a matter of significant public concern because proper disposition of sewage is "an absolute essential." *City of Omaha v. Matthews*, 197 Neb. 323, 326, 248 N.W.2d 761, 763 (1977). See, also, *Bedford Township v Bates*, 62 Mich. App. 715, 233 N.W.2d 706 (1975) (generally discussing importance of sewer systems to public health). The relationship between a private sewer system and nearby public systems is a factor which other courts have weighed in deciding whether to grant injunctive relief for a continuous and repeated trespass involving sewerlines. Although the court in *Underwood* ultimately concluded that injunctive relief was proper, it expressly considered the public interest, noting that there was no indication in the record that the landowner's sewage system was "so effected with a public interest as to entitle all property owners in the vicinity who are willing to pay a reasonable fee to connect with it." 270 Ala. at 118, 116 So. 2d at 578. Similarly, the court in *Atkinson Trust & Sav. Bank* noted that there was no evidence that the private sewer at issue was "an integral part of the public sewer system of the village." 332 Ill. App. at 255, 75 N.E.2d at 49. In *Bradley v. Schwab*, 3 Ohio App. 359 (1914), the court refused to enjoin a connection to a private sewer, specifically finding that there was no showing that the tap resulted in an overburden on the system.

Thus, although the trespass in this case was repeated and continuous, we conclude that equity requires a balancing of the degree to which it impaired the Lamberts' property rights against the public interest in proper disposition of sewage in order to determine whether the trespass should be enjoined. The trespass, while real, was largely imperceptible. Unlike the circumstances in *Atkinson Trust & Sav. Bank* and *Kittrell*, there is no proof that the infusion of the Holmbergs' sewage commingled with that originating in the two sanitary and improvement districts would overload or even threaten the capacity of the private sewerline. Also, the record reflects that the Holmbergs have always stood ready to pay connection fees and a proportionate share of future maintenance costs on the same basis as homeowners in SID's 5 and 9, a pledge repeated by their counsel during oral argument of this appeal. Thus, the nature of the trespass at issue here results in

only minimal interference with the Lamberts' possessory interest in their property.

Unlike the complainant in *Underwood v. West Point Manufacturing Company*, 270 Ala. 114, 116 So. 2d 575 (1959), the Lamberts do not operate a private sewage disposal system. Their sewerline connects at both ends to public sewerlines and is, therefore, a conduit through which sewage flows from public sewers to the sewage system of the city of Columbus. The record thus establishes that the Lamberts' private sewerline has become an integral part of a public sewer system. All of the sewer systems in the area of the Holmberg residence ultimately connect to the Lamberts' private line prior to connecting to the city's sewer system. The public interest would not be served, and indeed could be harmed, if the Holmbergs were prevented from connecting to a public sewer system having a privately owned segment, where they are willing to pay for the privilege of using that segment on the same terms as other users and their use would not overload or otherwise harm the system. Thus, while permitting the Holmbergs' connection will nominally impede the Lamberts' exclusive rights to possession of their sewerline, we conclude that such impediment is outweighed by the public interest in efficient and safe disposal of sewage. Neither equity nor the public interest is served by permitting the owner of a private sewerline connecting public sewer systems to unreasonably deny access.

On the unique facts of this case, we conclude on de novo review that injunctive relief for the continuous and repeated trespass is not proper. Any failure of the Holmbergs to pay connection fees and a proportionate share of future maintenance costs can be adequately remedied by an action at law. The same is true with respect to the Lamberts' allegations that the Holmbergs' connection reduces by one the number of currently undeveloped lots which can eventually be connected to the sewer system. Here, the legal remedy available to the Lamberts is at least as "plain and complete and as practical and efficient to the ends of justice and its prompt administration" as the remedy of injunctive relief. *Standard Oil Co. v. O'Hare*, 122 Neb. 89, 93, 239 N.W. 467, 469 (1931).

## CONCLUSION

For the reasons discussed, we affirm the judgment of the district court denying injunctive relief.

AFFIRMED.

WRIGHT, J., not participating.